**Joseph W. CLARK, Jr., and Dolin Ellsworth Hornberger, Appellants,**

v.

**Billy H. YOUNG, Appellee.**

**MTC, INC., d/b/a Mercer Transportation Company, Appellant,**

v.

**Billy H. YOUNG, Appellee.**

Court of Appeals of Kentucky.

May 10, 1985.

As Modified on Denial of Rehearing June 28, 1985.

Gerald Kirven, Louisville, for appellants Clark and Hornberger.

O. Grant Bruton, Lee Troutman Cory, Louisville, for appellant MTC, Inc.

Ann B. Oldfather, Louisville, for appellee.

Before COMBS, DUNN and MILLER, JJ.

MILLER, Judge.

This is an appeal from a judgment of the Jefferson Circuit Court entered upon a jury verdict for plaintiff. The facts are these:

Appellee, Billy Young, was employed as a warehouse leadman by Robintech, Inc., a manufacturer of plastic water pipes in Springfield, Kentucky. On November 24, 1980, Robintech had contracted with appellant/MTC, Inc., d/b/a Mercer Transportation Company (Mercer), a common carrier (49 U.S.C. § 10101 et seq. [1982]), to pick up a truckload of pipes for transport to a Robintech customer. To do the job, Mercer, in turn, entered into a lease agreement for a truck, flatbed trailer and equipment, together with a driver (appellant/Dolin Ellsworth Hornberger [Hornberger]) from appellant/Joe Clark (Clark).[1] The lease agreement provided, *inter alia,* for assumption of liability on the part of Mercer for tortious conduct of Clark. Relevant provisions of the lease agreement between Mercer, designated carrier, and Clark, designated contractor, provide as follows:

. . . .

(7) During the existence of this Agreement, *the Carrier assumes liability for bodily injuries to or the death of any person* (except the Contractor, or the employees, agent, servants, passengers or guests of the Contractors) or for the loss or damage to the property of others (except the Contractor, or the employees, agents, servants, passengers or guests of the Contractor) resulting from the negligent operation, maintenance or use of the vehicles described in Appendix A. . . . . (emphasis added)

. . . .

(14) In consonance with the provisions of the Federal Motor Carrier Act:

(a) *The Contractor shall direct in all respects, the operations and maintenance of the equipment used in the performance of this agreement,* which direction shall include selection of drivers, helpers, routes, period of service and places of repair, stopping, parking, maintenance and purchases of fuel, equipment, parts and accessories. (emphasis added)

(b) The Contractor shall be solely responsible for the direction of the employees, agents, and servants of the Contractor, including selecting, hiring, firing, su-

---

**1.** The lease was an "exclusive lease" for a period of one year. Such arrangements are strictly controlled by the ICC to protect the public interest. *See, e.g.,* 49 U.S.C. § 11107 (1982).

pervising, directing, setting wages, hours, performance standards, attendance requirements, and working conditions, paying and adjusting grievances of the employees, agents and servants of the Contractor, Carrier shall not request the Contractor to discontinue the use of any particular employee, agent or servant of the Contractor in the performance of Contractor's obligations under this Agreement except for substantial violations or breaches of applicable laws or governmental rules or regulations.

(c) *The Contractor shall have sole direction of the means and manner of the hauling, the pick-up, the loading, the unloading and delivery of the commodities.* (emphasis added)

. . . .

On said date, a five-man crew was present to load the pipes onto the aforementioned flatbed trailer. The Robintech crew included Donald Joe Thomas, Steve Thomas, Phillip Milburn, and Woody Staten. They assisted appellant/Hornberger, the driver. Because of the special nature of the cargo and the penetrating fumes of the diesel exhaust, the pipes had to be specially loaded and protected by a tarpaulin. The normal procedure for loading was to have the pipes covered with the tarpaulin before the forklift operator placed them on the trailer. However, on this occasion, the pipes were placed on the flatbed trailer by appellee/Young, the forklift operator, and then the crew, including Young, mounted the trailer to secure the tarpaulin. The change in method was at the direction of Clark's driver, Hornberger. While attempting to secure same with bungee straps (elastic straps or cords with a knot or hook in one end and a hook in the other), appellee claimed the bungee strap on which he was pulling in some manner struck him in the right eye resulting in permanent blindness and the subsequent surgical removal of the affected eye.[2]

On November 20, 1981, Young filed suit against Mercer alleging Mercer's negli-

gence. On November 8, 1982, Young moved the trial court to amend his complaint to include Clark and Hornberger as defendants. On November 22, 1982, the trial court granted leave to file the amended complaint. Clark and Hornberger asserted the one-year statute of limitations as a defense. KRS 413.140. The trial court denied their defense, holding the two-year no-fault (KRS 304.39–230) statute of limitations applicable. Trial by jury was had, resulting in a joint judgment against *all* of appellants/defendants—Mercer, Clark and Hornberger.

Appellants assign numerous points of error. Clark and Hornberger claim the trial court erred in applying the two-year no-fault statute of limitations.

Mercer alleges (1) the trial court erred in not holding certain of Young's pleadings to be judicial admissions; (2) the trial court erred in not directing a verdict on the ground that the relationship of Clark and Mercer was that of an "independent contractor," and therefore Mercer was not responsible for the acts of Clark and his agent, Hornberger; (3) the trial court committed several trial errors including (a) the inclusion of a "duty to warn" instruction, (b) failure to allow Mercer three additional juror preemptions, (c) inclusion of a "future medical expenses" instruction, and (d) exclusion of evidence of Robintech's negligence; and (4) the trial court erred in not giving credit on judgment for the workers' compensation recovery.

■ We will now address each of appellants' contentions. Clark and Hornberger claim the trial court erred in applying the two-year no-fault statute of limitations. KRS 304.39–230. We agree. We do not believe Young's injury resulted from the operation, maintenance or use of a motor vehicle as contemplated by the Kentucky no-fault statute. KRS 304.39. Clark and Hornberger direct our attention to KRS 304.39–020(6) which provides as follows:

---

**2.** Billy Young settled a workers' compensation claim against his employer, Robintech, on Octo-

ber 21, 1981. However, Robintech is not a party to these proceedings.

"Use of a motor vehicle" means any utilization of the motor vehicle as a vehicle including occupying, entering into and alighting from it. *It does not include* (i) conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises, or (ii) *conduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying, entering into, or alighting from it.* (emphasis added)

Young was "standing" on the flatbed trailer attempting to secure the tarpaulin when a bungee strap struck him in the eye. Appellants argue it was purely fortuitous that the injury occurred while Young was standing on the trailer. We do not believe that simply because Young was standing on the trailer this amounted to occupying, entering into or alighting from the motor vehicle within contemplation of the statute. *Cf. Commercial Union Assurance Companies v. Howard,* Ky., 637 S.W.2d 647 (1982). The trial court erred in applying the two-year no-fault statute of limitations and should have applied the one-year statute of limitations mandated in KRS 413.-140(1).

■ Young argues alternatively that the "relation back" language of CR 15.03 permits the amendment of his complaint to include Clark and Hornberger as defendants, thus saving his claim against them under the one-year statute. We agree. CR 15.03 provides in relevant part as follows:

RELATION BACK OF AMENDMENTS

(1) Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

(2) An amendment changing the party against whom a claim is asserted relates back if the condition of paragraph (1) is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (a) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

. . . .

We believe that the requirements of CR 15.03 are met. Obviously, the subject matter of the claim asserted in the amended pleading is the same as that set forth in the original pleading. Therefore, the requirement of section (1) is met.

Regarding section (2), in view of the identical business interest between Mercer and Clark arising from the lease agreement imposing responsibility upon Mercer for tortious acts of Clark, it is inconceivable that Clark had not received actual or constructive notice of the subject litigation. In fact, there is authority that actual notice is not required under CR 15.03(2).[3] *See Kirk v. Cronvich,* 629 F.2d 404 (5th Cir. 1980). Nor, in view of the agreement, can we understand how Clark can be prejudiced in the slightest. Any delay in marshaling a defense was undoubtedly cured by Mercer who knew of the suit and defended as the party who ultimately stood to lose under the lease agreement. Further, it is obvious that Young, as a Robintech employee, could not reasonably have been expected to know that Mercer had leased the driver and equipment from Clark, nor, for that matter, if it was leased—from whom. All indicia, including a nameplate of sorts on the vehicle, were that the operation and equipment were Mercer's. Undoubtedly, Clark knew that he was a proper defendant and that Young was mistaken or without knowledge of his presence in the operation. *Cf. Pelphrey v. Cochran,* Ky., 454 S.W.2d 675 (1970). Finally, we note that initially, both Mercer and Clark were represented by

---

**3.** Civil Rule 15.03 is substantially the same as the Federal Rule of Civil Procedure 15(c). 6

Bertlesman & Philipps, *Kentucky Practice,* CR 15.03, Comment 1 (4th ed. 1984).

the same counsel. This alone strongly supports our view of compliance with section (2). *See Morrison v. Lefevre,* 592 F.Supp. 1052 (S.D.N.Y.1984). In all, we conclude that this is a proper case for relation back under CR 15.03, and that the suit was properly instituted against Clark within the one-year limitation period. *See Kirk, supra. See, of general relevancy,* Annot., 11 A.L.R.Fed. 269 (1972).

 We find the arguments asserted by Mercer are without merit and warrant no discussion with the exception of its contention regarding a directed verdict. In an orthodox proceeding, it is undoubted that Mercer would have been entitled to a directed verdict. No agent of Mercer was about the job on the date of the mishap. Clark furnished the driver and the equipment from which Young received his injury. The assumption of liability for Clark's acts in the lease agreement does not create a master-servant relationship. *Cf. Farmer v. Employers Insurance of Wausau,* 152 Ga.App. 608, 264 S.E.2d 26 (1979); 49 U.S.C. § 11107 (1982). Since Clark was an independent contractor, his negligence was not imputable to Mercer.[4] However, the posture of this case is unorthodox. The lease agreement whereby Mercer assumed liability for Clark's acts was proven in evidence. Albeit wrong, Mercer insisted in submitting the "question of law" on agency to the jury. On this, the jury's finding was adverse to Mercer in holding that

Clark was not an independent contractor. Considering the acts of Clark and the lease agreement, the jury returned a verdict against both defendants. Our purpose on review is to determine whether, in the end, the judgment appealed from is erroneous. We do not think it is. We must examine the record as a whole and, in so doing, affirm the judgment, if it is right, although it was arrived at by circuitous or even erroneous road. Erroneous reasoning of the trial court is not a ground for reversal on appeal. *See Bibbs v. Kentucky & Indiana Terminal Railroad,* Ky., 300 S.W.2d 229 (1957); *Entwistle v. Carrier Conveyor Corporation,* Ky., 284 S.W.2d 820 (1955); *Gaidry Motors v. Brannon,* Ky., 268 S.W.2d 627 (1954); *Keesee v. Smith,* 289 Ky. 609, 159 S.W.2d 56 (1941). This being true and it appearing from the record that Mercer was liable in any event for the acts of Clark, which acts were found to be the causation of Young's injury, the joint judgment against both defendants must stand.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All concur.

---

[4] The question of whether Mercer and Clark had an independent contractor relationship was a question of law, and therefore improperly submitted to the jury. Questions of law are not fit for jury consideration. 2 J. Palmore, *Kentucky Instructions to Juries,* § 13.11(j) (1977).