Michael NOLPH, M.D., Movant,

v.

Helen SCOTT, Respondent.

Supreme Court of Kentucky.

March 12, 1987.

Galen J. White, Jr., William P. Swain, Louisville, for movant.

J. Michael Smither, Mark Webster, Hollis L. Searcy, Louisville, for respondent.

## OPINION OF THE COURT

The issue on this appeal is whether CR 15.03 permits an amended complaint, substituting movant Michael Nolph for an "unknown defendant," to relate back to the time of the original complaint where "unknown defendants" were constructively served by appointment of a warning order attorney.

The trial court ruled relation back was not permitted and granted Movant's motion for summary judgment. The Court of Appeals reversed. We hold CR 15.03 does not permit relation back under the circumstances of this case and reverse the decision of the Court of Appeals.

Respondent Scott instituted this medical malpractice action against the University of Louisville, University Hospital, Drs. Selvoy Fillerup and Richard Albert, and other unknown defendants. The unknown defendants were identified as "being certain persons who were careless and negligent in treating Helen Scott at the University Hospital...." The complaint alleged medical malpractice for injuries sustained as a result of surgery performed on March 9, 1982, at University Hospital. Michael Nolph was not identified by name in the original complaint.

On March 2, 1983, Respondent sought constructive service on the unknown defendants through the appointment of a warning order attorney. A letter of the warning order attorney directed to the unknown defendants was sent to University Hospital on or about March 7, 1983. The trial court found that Nolph did not receive notice of the lawsuit prior to March 11, 1983, when the limitations period expired.

On July 14, 1983, appellee took the deposition of Dr. Fillerup who identified Michael Nolph as being present during Scott's surgery. On September 9, 1983, Respondent deposed Nolph and verified that he was the supervising physician in the operating room during her surgery. On November 7, 1983, Respondent filed an amended complaint naming Michael Nolph as a party defendant. Nolph was finally served with summons on December 23, 1983, approximately nine months past the limitations

period. By his own admission Nolph first learned of the lawsuit, informally, in May or June, 1983.

In order for an amended pleading to relate back to the time of filing of the original complaint, the requirements of CR 15.03 must be met. The relevant sections of the rule are as follows:

(1) Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

(2) An amendment changing the party against whom a claim is asserted relates back if the condition of paragraph (1) is satisfied and, within the period provided by law for commencing the action against him, *the party to be brought in by amendment (a) has received such notice of the institution of the action* that he will not be prejudiced in maintaining his defense on the merits, and (b) knew or should have known that but for mistake concerning the identity of the proper party, the action would have been brought against him.... (Emphasis added).

There is no dispute among the parties that the requirement of section (1) is met. The present controversy involves the requirements of section (2).

Scott contends the amended complaint relates back to the earlier filing date because Nolph received constructive notice of the lawsuit. We disagree. Constructive service on unknown defendants through appointment of a warning order attorney is not sufficient notice for the purposes of CR 15.03.

The warning order rules provide for constructive service on a person unknown to the plaintiff. CR 4.05, 4.06, 4.07. While strict compliance with these rules is required, see e.g., *Potter v. Breaks Interstate Park Commission,* Ky., 701 S.W.2d 403 (1985), actual notice to the defendant is not necessary. Appointment of a warning order attorney is a procedural device per-

mitting an action to proceed, in certain circumstances, unknown to the defendant.[1]

■ However, the relation back rule mandates that the party to be named in an amended pleading knew or should have known about the action brought against him. CR 15.03(2)(b). Actual, formal notice may not be necessary. *Cf., Funk v. Wagner Machinery, Inc.*, Ky.App., 710 S.W.2d 860 (1986). Nevertheless, knowledge of the proceedings against him gained during the statutory period must be attributed to the defendant. CR 15.03(2)(b). As noted by the United States Supreme Court in its review of the federal relation back rule,[2] "(T)he linchpin is notice, and notice within the limitations period." *Schiavone v. Fortune aka Time, Inc.*, — U.S. —, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986).

■ Movant Nolph lacked notice of the lawsuit within the limitations period. Thus, a key ingredient of CR 15.03 is missing. The trial court did not err in refusing to permit the amended pleading to relate back to the time of the original complaint. The decision of the Court of Appeals is reversed.

STEPHENS, C.J., and GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents in a separate opinion and is joined in his dissent by LAMBERT, J.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

This decision is a triumph of form over substance, a victory for those who favor the "sporting theory" of law over the "search for the truth."

The new rules of civil procedure in general, and the rule of relation back (CR 15.03) in particular, were designed for the opposite result to avoid victory through technicality and achieve trial on the merits.

Wright & Miller, *Federal Practice & Procedure*, Civil §§ 1029 and 1499.

The plaintiff seeks to add Dr. Nolph by name to a law suit in which he has been an integral part from the beginning. He functioned in a teaching hospital in a supervisory capacity, charged by the defendant/hospital with the duty of teaching and supervising the defendants/residents whose names appear on the typewritten operating report. Reason and common sense dictate that this group of defendants share a community of interests and should be charged with common knowledge such that there is no prejudice when Dr. Nolph is replaced by name for the "unknown defendants" referred to in the complaint. Surely the good doctor should have been the first person apprised of the law suit in the ordinary course of events. If this did not occur, through design or inadvertence, nevertheless the people defending the remaining defendants were in effect representing his interests as well. Our Court should not reward with victory those who play games to conceal the identity of a key player until it is too late to name him in the law suit. Leaving Dr. Nolph's name off of the surgical report—the only legible identification of the participants in the surgery which is the gravamen of this action—is such a game.

I agree with the Majority Opinion that adding "unknown defendants" and attempting service upon them through a letter sent by a Warning Order Attorney to the Hospital did not achieve constructive service on Dr. Nolph. This law suit is an action in personam and not in rem, and constructive service does not, per se, make Dr. Nolph a party defendant. But this step did serve as a signal, clear as a bell, that the plaintiff's law suit meant to include all those responsible for her surgical treatment, persons whom the hospital could be reasonably expected to notify, and Dr. Nolph surely fits in that classification.

---

1. See generally Leathers, "Rethinking Jurisdiction and Notice in Kentucky," 71 Kentucky Law Journal 755, 780 (1982–83).

2. Civil Rule 15.03 is substantially the same as Federal Rule of Civil Procedure 15(c). 6 Bertelsman & Philipps, *Kentucky Practice*, C.R. 15.-03, Comment 1 (4th ed. 1984).

In this opinion our Court has elected to cause a harsh and unjust result where the law itself does not require such a result. There is ample authority to sustain the decision of the Court of Appeals that service on Dr. Nolph was not time barred by the one year statute of limitations because of the saving provisions found in CR 15.03, "relation back of amendments." This authority includes:

1) The Commentary found in Bertelsman & Philipps, *Kentucky Practice*, 4th ed., to CR 4.15, pp. 88–89, and to CR 15.03, pp. 328–29;

2) Recent well reasoned published opinions from the Kentucky Court of Appeals in *Funk v. Wagner Machinery, Inc.*, Ky. App., 710 S.W.2d 860 (1986) and *Clark v. Young*, Ky.App., 692 S.W.2d 285 (1985); and

3) A significant number of federal decisions with fact situations more in point than the *Schiavone* case which is cited in the majority opinion as controlling authority. These include *inter alia, Ingram v. Kumar*, 585 F.2d 566 (C.A.2d 1978), cert. denied 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499; *Kirk v. Cronvich*, 629 F.2d 404 (C.A.5th 1980); and *Travelers Indemnity Co. v. United States*, 382 F.2d 103 (C.A.10th 1967).

*All* of the above authorities would apply the rule of relation back of amendments provided in CR 15.03 to the present situation because there is such a *community* of interests between Dr. Nolph and the originally named defendants that it is patently unreasonable to insulate him from their notice of the lawsuit.

As stated in *Travelers Indemnity Co. v. United States*, the "purpose of the federal rules [is not] furthered by denying the addition of a party who has a close identity of interest with the old party when the added party will not be prejudiced. The ends of justice are not served when forfeiture of just claims because of technical rules is allowed." 382 F.2d at 106.

The facts here cry out for a different result. The plaintiff filed a medical negli-gence action against University of Louisville Hospital and two physicians, the *only* two, whose names appeared on the official typewritten operative report. Although Dr. Nolph's name appears elsewhere in the hospital records, it is illegibly written and ambiguously connected to the medical procedure which is the gravamen of the plaintiff's complaint. A suit against him in the circumstances would have invited a physicians' countersuit for malicious prosecution under the invitation to countersue which we extended in *Raine v. Drasin*, Ky., 621 S.W.2d 895 (1981).

The facts are as stated in the Court of Appeals' opinion which we have decided to reverse. Dr. Nolph was an Assistant Professor of Medicine at the University of Louisville, acting for the Hospital as supervising surgeon during the operation, and teacher and mentor of the two surgical residents whose names did appear on the operative record:

"Whatever Dr. Fillerup and Dr. Albert did, they did under the tutelage of Dr. Nolph." Court of Appeals, slip op., p. 6.

The operation was performed on March 9, 1982, and plaintiff's suit was filed on March 2, 1983, timely, but shortly before running of the one year statute of limitations. A one year period for the limitation of actions in medical malpractice cases is deplorably short, given the usual state of facts. More often than not, medical malpractice is significantly obscured by follow-up treatment and delay in recognizing that one has a case. Negligent medical treatment creates a complicated situation wherein it is difficult for the claimant to realize that she is suffering from the result of negligent treatment rather than from the natural consequences of the medical condition that caused her to seek treatment in the first place. Here, the situation was further complicated because it was only after a second operation failed to correct the unsatisfactory results from the first that the plaintiff realized that she had a serious injury that justified turning to the law for a remedy.

The plaintiff filed suit against the two surgical residents and the teaching hospital, those who were the reasonably identifiable defendants. She further sued "unknown defendants ... who were careless and negligent in treating" her. She immediately attempted service on these "unknown defendants" by a warning order attorney who mailed a warning order letter and a copy of the complaint to the University of Louisville Hospital. The Hospital did not respond to the letter or the complaint. Presumably the Hospital did not even discuss the suit with Dr. Nolph, the person it had put in charge of the operation. We are told to assume that the hospital did not know what had happened in the operating room and did not care to find out.

Instead, the Hospital moved for summary judgment on the grounds of sovereign immunity, and at the same time obtained a court order staying all discovery in the action. If University Hospital had responded to discovery served in March of 1983, then the identity of Dr. Nolph would have been revealed much earlier. As a result, plaintiff was unable to depose the operating physicians to discover Dr. Nolph's part in the surgery until July 1983. The plaintiff proceeded with reasonable diligence to depose one of the surgical residents, to learn of Dr. Nolph, to depose Dr. Nolph, and to move to amend her complaint under CR 15.03 to substitute Dr. Nolph as one of the unknown defendants previously named in the complaint.

*Raine v. Drasin, supra,* presents the countersuit dilemma. The physician's countersuit is available as punishment if a physician is named as a defendant without foundation in fact. Now this present decision imposes an equally severe penalty if claimant's counsel, faced with the one year statute of limitations, fails to name every physician whose name appears anywhere in the hospital record. We have indeed presented the injured claimant with a Hobson's Choice. "The logic of words should yield to the logic of realities." Justice Louis D. Brandeis in *DiSanto v. Pennsyl-*

*vania,* 273 U.S. 34, 43, 47 S.Ct. 267, 271, 71 L.Ed. 524 (1927).

The "logic of realities" applied in the present situation is found in the Court of Appeals' opinion; there is no reasonable possibility that Dr. Nolph would not be among those immediately informed when the hospital received the letter from the warning order attorney asking it to respond for "unknown defendants." He was their agent and supervisory employee and the first person logically to be consulted about this matter. In present circumstances, the fact that service by Warning Order Attorney is only constructive service is irrelevant. The Court of Appeals' opinion is based on informal notice, not the technicalities of constructive service. As stated by the Court of Appeals:

> "It is not unfair to charge Dr. Nolph with constructive *notice* of this action whether the warning order letter was sent to his employer addressed unknown defendants who treated Helen Scott at the ENT Clinic on March 9, 1982, and accompanied by complaint naming ... [his] surgical residents, as defendants." [Emphasis added.]

Under CR 15.03 *service* of process is not required. Indeed, the purpose for CR 15.03 is to take care of this problem by relation back where personal service was not obtained in the first instance but it is fair to hold in a party served at a later time, after the statute of limitations has run, because there is an identity or community of interest with the named defendants such that the later named party undoubtedly would know of the action, despite protestations to the contrary, unless the named parties sharing the same interest intentionally concealed the law suit from the unnamed party. This is the "identical business interest" underlying the Kentucky Court of Appeals' decisions to apply CR 15.03 in *Clark v. Young, supra,* and in *Funk v. Wagner Machinery, Inc., supra.* In the *Clark* case, the complaint named an interstate carrier, but failed to name the contractor providing services for the carrier. In *Funk,* a products liability action,

the complaint named the middle man, the sales representative, but failed to name the manufacturer. In both the rule of relation back was applied despite protestations that the later named party had no "actual notice." 710 S.W.2d at 862.

In the present case the later named party was the supervising agent for the teaching hospital, which was a named defendant, and the teacher in the operating room supervising the surgery being performed by the two residents, also named defendants. Unless the law condones pretense, Dr. Nolph should be prepared to defend this case on the merits.

This case is also like *Clark v. Young, supra,* in one other respect. Note that the same law firm represents Dr. Fillerup as represents University Hospital. No doubt it would also represent Dr. Albert if he gets served and Dr. Nolph if his counsel were not seeking to interpose the present technicality. It is reasonable to conclude that there is an identity of interest at the end of the road either through self-insurance under the University of Louisville Medical Malpractice Act or through some insurance carrier, or both. It is quite likely that one entity shares financial responsibility and controls the case for all involved.

This is yet another unfortunate decision in a line of recent cases from our Court using an unnecessarily harsh and overly technical approach to the detriment of the person who has been wronged. This line of cases includes, among others, *Reda Pump Co. v. Finck,* 713 S.W.2d 818 (1986), *Federal Kemper Ins. Co. v. Hornback,* Ky., 711 S.W.2d 844 (1986), *Kirchner v. Riherd,* Ky., 702 S.W.2d 33 (1985), and *Prudential Life Ins. Co. v. Moody,* Ky., 696 S.W.2d 503 (1985). This case, like these others named, harkens back to 19th Century "mechanical jurisprudence," condemned by Roscoe Pound. See Pound, *Mechanical Jurisprudence,* 8 Colum.L.Rev. 605 (1908).

The nadir of mechanical jurisprudence is reached when conceptions are used, not as premises from which to reason, but as ultimate solutions. So used, they cease to be conceptions and become empty words. *Id.,* at 620.

LAMBERT, J., joins in this dissent.