Leah SCHWINDEL; and Jake Schwindel, Appellants,

v.

MEADE COUNTY, Kentucky; Mark S. Brown, in His Official Capacity as Meade County Judge/Executive; Charles E. Goghill, Jean McNally, Charles Baker, IRV Spencer, Troy Seelye, and Kent Allen, in their Official Capacity as Members of the Meade County Fiscal Court; Meade County Board of Education; David T. Wilson, in His Official Capacity as Superintendent of the Meade County School System; James S. Redmon, Michael Chism, Jeff Greer, Belinda Cross, and John Inman, in their Official Capacities as Meade County Board of Education Members; and the Unknown Defendant(s), the Servants, Agents, and Employees of Meade County, Kentucky, and/or Meade County Board of Education, Appellees.

No. 2001-SC-0648-TG.

Supreme Court of Kentucky.

Aug. 21, 2003.

Paul L. Madden, Paul Liston Madden, Jr., Kathleen Joy C. Madden, Thomas Edward Madden, Hawesville, Counsel for Appellants.

Reford H. Coleman, Matthew C. Hess, Coleman, Lochmiller & Hall, Elizabethtown, Darren A. Sipes, Meade County Attorney, Brandenburg, Counsel for Appellees Meade County, Kentucky; Mark S. Brown, in His Official Capacity as Meade County Judge/Executive; Charles E. Goghill, Jean McNally, Charles Baker, IRV Spencer, Troy Seelye, and Kent Allen, in

their Official Capacity as Members of the Meade County Fiscal Court.

Donald E. Skeeters, Skeeters, Bennett, Shumate & Wilson, Radcliff, Michael A. Owsley, W. Cravens Priest, III, Brett A. Reynolds, English, Lucas, Priest & Owsley, Bowling Green, Counsel for Appellees Meade County Board of Education; David T. Wilson, in His Official Capacity as Superintendent of the Meade County School System; James S. Redmon, Michael Chism, Jeff Greer, Belinda Cross, and John Inman, in their Official Capacities as Meade County Board of Education Members; and the Unknown Defendant(s), the Servants, Agents, and Employees of Meade County, Kentucky, and/or Meade County Board of Education.

Opinion of the Court by Justice COOPER.

On March 26, 1999, Appellant Leah Schwindel was injured while a spectator at an interscholastic softball tournament held at Meade Olin Park in Brandenburg, Kentucky. As Schwindel attempted to descend the bleachers provided for the use of spectators, a foot rail slipped out of place causing her to fall onto the open metal braces below. She was immediately transported to a hospital where surgery was performed. At 12:27 p.m. on Monday, March 27, 2000, eleven hours and thirty-three minutes before the expiration of the period of limitations for filing an action for personal injuries, KRS 413.140(1)(a), CR 6.01, Schwindel and her husband, Appellant Jake Schwindel, filed a complaint for damages in the Meade Circuit Court (she for her injuries, he for loss of consortium). Named as defendants were Meade County and its county judge and fiscal court magistrates "in their official capacities" and the Meade County Board of Education and its superintendent and board members "in their official capacities."

The complaint alleges that: (1) Meade Olin Park is owned by Meade County; (2) the softball tournament was sponsored by the Meade County Board of Education; and (3) "their servants, agents, and employees," negligently caused Mrs. Schwindel's injuries by failing to properly construct or maintain the bleachers. Mrs. Schwindel subsequently filed an affidavit (the only evidence in the record) alleging, inter alia, that the foot rail was not properly bolted or attached to the bleachers. The affidavit also alleged that spectators, including Mrs. Schwindel, were charged an admission fee to attend the event and that refreshments and event programs were sold on the premises. All of the named defendants filed motions to dismiss, CR 12.02(f), asserting the defense of sovereign immunity.[1] (When Mrs. Schwindel filed her affidavit in opposition to the motions, the motions to dismiss were converted into motions for summary judgment. *Ferguson v. Oates*, Ky., 314 S.W.2d 518, 521 (1958)).

On July 6, 2000, the date scheduled for final arguments on the motions and more than three months after the expiration of the period of limitations, the Schwindels were permitted to file an amended complaint naming as additional defendants "The Unknown Defendant(s), the servants, agents, and employees of Meade County, Kentucky, and/or Meade County Board of Education" and asserting negligence claims against them. The amended complaint also alleged that the original defendants were operating an "enterprise for profit" by charging an admission fee and

1. The motions were filed and decided before we clarified that boards of education enjoy governmental, not sovereign, immunity.

*Yanero v. Davis*, Ky., 65 S.W.3d 510, 527 (2001).

selling refreshments and event programs "for income and profit." The circuit judge abated the motions to dismiss so that Appellants could depose the county judge/executive, the superintendent of schools, and the park superintendent to discover evidence that might show why the facially immune original defendants were not entitled to a dismissal. No depositions were ever taken nor were any affidavits, other than that of Mrs. Schwindel, ever filed. No attempt was made to identify the "unknown defendants" through an inquiry under the Open Records Act, KRS 61.870, *et seq.*, or otherwise, or to have a warning order attorney appointed for the purpose of obtaining constructive service of process on them. CR 4.05(e). On January 23, 2001, summary judgment was entered in favor of the original defendants. On July 12, 2001, the amended complaint was dismissed. The Schwindels appealed and we granted transfer. CR 74.02.

## I. COUNTY LIABILITY.

A county government is cloaked with sovereign immunity. *Franklin County v. Malone*, Ky., 957 S.W.2d 195, 203 (1997), *overruled on other grounds by Commonwealth v. Harris*, Ky., 59 S.W.3d 896, 900 (2001) (as to whether claim against a county can be brought in Board of Claims), *and on other grounds by Yanero v. Davis*, *supra* note 1, at 523 (as to whether public employee performing ministerial function is cloaked with official immunity); *Cullinan v. Jefferson County*, Ky., 418 S.W.2d 407, 408 (1967), *overruled on other grounds by Yanero*, *supra* note 1 at 527 (as to whether a local board of education is a "government"); *Moores v. Fayette County*, Ky., 418 S.W.2d 412, 413 (1967); *cf. Yanero*, *supra* note 1, at 526. Nor can a county, absent a legislative waiver of immunity, *see Reyes v. Hardin Memorial Hospital*, Ky., 55 S.W.3d 337, 338–39 (2001), be held vicariously liable in a judicial court for the ministerial acts of its agents, servants, and employees. *Cf. Yanero*, *supra* note 1, at 528; *Malone*, *supra*, at 199–200; *Moores*, *supra*, at 414. If damages could be recovered against a county on the basis of *respondeat superior*, the concept of sovereign immunity would be largely nullified because state and county governments perform their ministerial functions by and through their agents, servants, and employees. That brings us to Appellants' primary contention with respect to their claims against Meade County, *i.e.*, that KRS 65.200, *et seq.*, the so-called "Claims Against Local Governments Act" (CALGA), constitutes a waiver by the General Assembly of a county's immunity from vicarious liability for damages arising from the tortious performance of ministerial acts by its employees. For the reasons explained *infra*, we conclude that the legislative intent was not to waive any immunity enjoyed by any local government but to specify what damages could be obtained against local governments that are subject to common law judgments and what obligation a local government has to provide a defense for and pay judgments rendered against its employees for the tortious performance of their ministerial duties.

Any attempt to discern the legislative intent of the 1988 enactment of CALGA, 1988 Ky. Acts, ch. 224, §§ 15–21, necessarily begins with an examination of the legal climate existing at the time with respect to immunities. As of 1988, this Court had recently reaffirmed that municipal immunity extended only to "legislative or judicial or quasi-legislative or quasi-judicial functions." *Gas Serv. Co., Inc. v. City of London*, Ky., 687 S.W.2d 144, 149 (1985) (quoting *Haney v. City of Lexington*, Ky., 386 S.W.2d 738, 742 (1964)). We also had recently used the terms "sovereign immunity" and "governmental immunity" interchangeably, *Dunlap v. Univ. of Ky.*, Ky.,

716 S.W.2d 219, 219, 222 (1986), an interchange of terminology not uncommon at the time. *See Yanero, supra* note 1, at 519. And we were then considering whether to affirm a recent Court of Appeals' decision holding that employees of immune entities did not enjoy the same immunity as their employers. That holding was, in fact, subsequently affirmed in *University of Louisville v. O'Bannon,* Ky., 770 S.W.2d 215, 217 (1989).

KRS 65.2001 is titled "Application and construction of KRS 65.2002 to 65.2006." Subsection (1) of KRS 65.2001 provides:

(1) Every action in tort *against any local government* in this Commonwealth for death, personal injury or property damages proximately caused by:

 (a) Any *defect or hazardous condition in* public lands, buildings or other *public property,* including personalty;

 (b) Any *act or omission of any employee,* while acting within the scope of his employment or duties; or

 (c) Any act or omission of a person other than an employee for which the local government is or may be liable

*shall be subject to the provisions of KRS 65.2002 to 65.2006.*

(Emphasis added.)

Nothing in subsection (1) purports to waive the existing immune status of any local government. It simply provides that all subsequent sections of the Act apply, *inter alia,* to "actions in tort" brought "against any local government" because of a "defect or hazardous condition" existing on public property or an "act or omission of any employee." KRS 65.200 defines "action in tort," "employee," and "local government" as follows:

(1) "Action in tort" means any claim for money damages based upon negligence, medical malpractice, intentional tort, nuisance, products liability and strict liability, and also includes any wrongful death or survival-type action.

(2) "Employee" means any elected or appointed officer of a local government, or any paid or unpaid employee or agent of a local government, provided that no independent contractor nor employee nor agent of an independent contractor shall be deemed to be an employee of a local government.

(3) "Local government" means any city incorporated under the law of this Commonwealth, the offices and agencies thereof, any county government or fiscal court, any special district or special taxing district created or controlled by a local government.

■ Per KRS 65.200(3), CALGA applies not only to counties but also to municipalities and taxing districts. Counties and municipalities are afforded different degrees of immunity from tort liability. Whereas a county enjoys sovereign immunity and cannot be held vicariously liable for the torts of its employees, a municipality is immune only for torts committed in the performance of legislative or judicial or quasi-legislative or quasi-judicial functions, *Gas Service Co., supra,* and can otherwise be held vicariously liable for the torts of its employees. 57 Am.Jur.2d, *Municipal, County, School, and State Tort Liability* § 147 (West 2001); *e.g., City of Louisville v. Chapman,* Ky., 413 S.W.2d 74, 76–77 (1967).

Subsection (2) of KRS 65.2001(2) expressly disclaims any legislative intent ("except as otherwise specifically provid-

ed") to modify the existing immune status of any local government:

> (2) Except as otherwise specifically provided in KRS 65.2002 to 65.2006, all enacted and case-made law, substantive or procedural, concerning actions in tort against local governments shall continue in force. No provision of KRS 65.2002 to 65.2006 shall in any way be construed to expand the existing common law concerning municipal tort liability as of July 15, 1988, *nor eliminate or abrogate the defense of governmental immunity for county governments.*

(Emphasis added.)

 Appellants assert that the last clause of this subsection reflects a legislative intent to waive sovereign immunity as to county governments and, instead, cloak them with governmental immunity. If so, a county would remain immune for the tortious performance of a governmental function but not the tortious performance of a proprietary function. *Yanero, supra* note 1, at 519–21. That interpretation, however, would render the second sentence of subsection (2) inconsistent with the first sentence, which expresses a clear intent to maintain the status quo with respect to tort actions against local governments, "except as otherwise specifically provided in KRS 65.2002 to 65.2006" (*i.e.,* not in KRS 65.2001). It is a familiar rule of statutory construction that inconsistent statutory provisions must be harmonized if possible and "where two constructions of a statute are possible, by one of which the entire act may be made harmonious while the other will create discord between different provisions, the former should be adopted." *Bischoff v. Hennessy,* Ky., 251 S.W.2d 582, 583 (1952) (quotation omitted). Applying this rule, we conclude that the 1988 General Assembly did not intend to change the immunity status of counties but, like this Court in *Dunlap, supra,* merely treated "sovereign immunity" and "governmental immunity" as interchangeable concepts. Furthermore, the emphasized language neither *expressly waives* a county's sovereign immunity nor "by such overwhelming implications from the text . . . leave[s] no room for any other reasonable construction," thus does not satisfy the so-called "*Withers* test" for waiver of immunity. *Withers v. Univ. of Ky.,* Ky., 939 S.W.2d 340, 346 (1997) (quotation omitted).

For the same reason, KRS 65.2002, titled "Amount of damages recoverable against local governments," is not an implied waiver of immunity:

> The amount of damages recoverable against a local government for death, personal injury or property damages arising out of a single accident or occurrence, or sequence of accidents or occurrences, shall not exceed the total damages suffered by plaintiff, reduced by the percentage of fault including contributory fault, attributed by the trier of fact to other parties, if any.

This statute is an apparent attempt to limit the damages awardable against a local government for its non-immune tortious acts, *e.g.,* a municipality's tortious performance of a function that is not legislative, judicial, quasi-legislative, or quasi-judicial in nature, and to limit the damages that a local government is required to pay on behalf of its employees pursuant to KRS 65.2005(1), *infra.*

Appellants further assert that certain provisions in KRS 65.2003, KRS 65.2004, and KRS 65.2005 expressly or impliedly waive a county's immunity from vicarious liability. KRS 65.2003 provides:

> Notwithstanding KRS 65.2001, a local government shall not be liable for injuries or losses resulting from:

(1) Any claim by an employee of the local government which is covered by the Kentucky workers' compensation law;

(2) Any claim in connection with the assessment or collection of taxes;

(3) Any claim arising from the exercise of *judicial, quasi-judicial, legislative or quasi-legislative authority* or others, [sic] exercise of judgment or discretion vested in the local government, which shall include by example, but not be limited to:

 (a) The adoption or failure to adopt any ordinance, resolution, order, regulation, or rule;

 (b) The failure to enforce any law;

 (c) The issuance, denial, suspension, revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization;

 (d) The exercise of discretion when in the face of competing demands, the local government determines whether and how to utilize or apply existing resources; or

 (e) Failure to make an inspection.

*Nothing contained in this subsection shall be construed to exempt a local government from liability for negligence arising out of acts or omissions of its employees in carrying out their ministerial duties.*

(Emphasis added.)

Appellants interpret the last sentence of KRS 65.2001 as an express waiver of a county's sovereign immunity from vicarious liability for the tortious performance of ministerial duties by its employees. We

disagree. This statute is entitled "Claims disallowed" and was enacted as section 18 of chapter 224 of the 1988 Kentucky Acts. The language of subsection (3) obviously pertains to "claims disallowed" against municipalities because it adopts almost verbatim the exclusions from liability recited in *Gas Service Co. v. City of London* and *Haney v. City of Lexington, supra,* and the last sentence pertains only to subsection (3) because it is self-limited to "this subsection." *Compare e.g.,* KRS 65.2004(1) which refers to "subsection (2) of this section" and KRS 65.2005(1) which refers at one point to "subsection (2) of this section" and at another point to "subsection (3) of this section." Obviously, the General Assembly knew the difference between a section and a subsection and intended the last sentence of KRS 65.2003 (section 18 of the Act) to pertain only to subsection (3), which pertains only to municipalities which, as noted *supra,* are not immune from vicarious liability for the tortious performance of ministerial duties by its employees.[2]

Nor can the following language of KRS 65.2004 be construed as an implied waiver of a county's sovereign immunity:

(1) Upon motion of a local government *against which final judgment has been rendered for a claim within the scope of KRS 65.200 to 65.2006,* the court, in accordance with subsection (2) of this section, may include in such judgment a requirement that the judgment be paid in whole or in part by periodic payments....

The provision does not purport to be a waiver of immunity by either "express language" or "overwhelming implication." *Withers, supra,* at 346. It obviously per-

---

**2.** By specifying an exception only for the tortious performance of *ministerial* duties, the last sentence of KRS 65.2003 does not purport to waive the "qualified official immunity" that a municipal official or employee enjoys while performing a discretionary function. *Yanero, supra* note 1, at 521–23.

tains not to counties but to other local governments against which judgments can be rendered, *e.g.,* municipalities.

The section of CALGA that *does* apply to *all* local governments, including counties, is KRS 65.2005 which requires a local government to provide a legal defense for and pay any judgment obtained against an employee for the tortious performance of a ministerial act, subject to certain exceptions.

KRS 65.2005. Defense of employee by local government—Liability of employee.

(1) *A local government shall provide for the defense of any employee* by an attorney chosen by the local government in any action in tort arising out of an act or omission occurring within the scope of his employment of which it has been given notice pursuant to subsection (2) of this section. *The local government shall pay any judgment* based thereon or any compromise or settlement of the action except as provided in subsection (3) of this section and except that a local government's responsibility under this section to indemnify an employee shall be *subject to the limitations contained in KRS 65.2002.*

(2) Upon receiving service of a summons and complaint in any action in tort brought against him, an employee shall, within ten (10) days of receipt of service, give written notice of such action in tort to the executive authority of the local government.

(3) A local government may refuse to pay a judgment or settlement in any action against an employee, or if a local government pays any claim or judgment against any employee pursuant to subsection (1) of this section, it may recover from such employee the amount of such payment and the costs to defend if:

(a) The employee acted or failed to act because of fraud, malice, or corruption;

(b) The action was outside the actual or apparent scope of his employment;

(c) The employee willfully failed or refused to assist the defense of the cause of action, including the failure to give notice to the executive authority of the local government pursuant to subsection (2) of this section;

(d) The employee compromised or settled the claim without the approval of the governing body of the local government; or

(e) The employee obtained private counsel without the consent of the local government in, which case, the local government may also refuse to pay any legal fees incurred by the employee.

Nothing in this section purports to waive a county government's immunity from suit or from a judgment *against itself* premised upon vicarious liability. However, it does require a county government, subject to the limitations contained in KRS 65.2002 and the exceptions enumerated in KRS 65.2005(3), to provide a defense for and pay any judgment rendered against a county employee for damages arising out of the performance of a ministerial act. In this case, the original complaint did not seek a judgment against any county employee but only sought to hold the county vicariously liable for the negligence of its unnamed agents, servants, or employees. Thus, KRS 65.2005 has no application to the damages sought in the original complaint. And even if Meade County could have been required to pay a judgment rendered against its employees, no judgment could be entered against the county,

itself; thus, the complaints against it were properly dismissed.

## II. BOARD OF EDUCATION LIABILITY.

■ The very definition of "local government" in KRS 65.200(3), *supra*, excludes a board of education from the purview of CALGA. It is a general rule of statutory construction that the enumeration of particular items or categories excludes others not specifically mentioned. *Commonwealth v. Harris*, 59 S.W.3d at 900.

■ A board of education is not a local government but an agency of state government. *Yanero, supra* note 1, at 527. As such, it enjoys "governmental immunity," *i.e.*, it can be sued for damages for the tortious performance of a proprietary function but not a governmental function. *Id.* at 526–27. The conduct of interscholastic athletics is a governmental function of a board of education. *Id.* at 527. So, too, can be the operation of a public park. KRS 97.010(2); *Ky. Lake Vacation Land, Inc. v. State Prop. and Bldgs. Comm'n.*, Ky., 333 S.W.2d 779, 784 (1960); *Baker v. City of Lexington*, Ky., 310 S.W.2d 555, 555–56 (1958); *City of Louisville v. Pirtle*, 297 Ky. 553, 180 S.W.2d 303, 304 (1944), *overruled on other grounds by Haney*, 386 S.W.2d at 742; *Clark v. City of Louisville*, 273 Ky. 645, 117 S.W.2d 614, 616 (1938).[3] Of course, unless the Meade County Board of Education had assumed any facet of the maintenance or operation of Meade Olin Park, the fiscal court is the entity statutorily responsible for its maintenance. KRS 67.080(2)(b).

■ The fact that an admission fee was charged or that refreshments and event programs were sold at the softball tournament did not convert this event from a governmental function into a proprietary one. *Boyer v. Iowa High Sch. Athletic Ass'n*, 256 Iowa 337, 127 N.W.2d 606, 608–09 (Iowa 1964); *Richards v. Sch. Dist. of City of Birmingham*, 348 Mich. 490, 83 N.W.2d 643, 653 (1957), *overruled on other grounds by Williams v. City of Detroit*, 364 Mich. 231, 111 N.W.2d 1, 9 (1961); *Mokovich v. Indep. Sch. Dist. of Virginia, No. 22*, 177 Minn. 446, 225 N.W. 292, 294 (1929), *overruled on other grounds by Spanel v. Mounds View Sch. Dist. No. 621*, 264 Minn. 279, 118 N.W.2d 795, 803 (1962); *Rhoades v. Sch. Dist. No. 9, Roosevelt County*, 115 Mont. 352, 142 P.2d 890, 892 (1943); *Thompson v. Bd. of Educ., City of Millville*, 12 N.J.Super. 92, 79 A.2d 100, 103 (Cumberland County Ct.1951); *Reed v. Rhea County*, 189 Tenn. 247, 225 S.W.2d 49, 51 (1949) ("The mere fact that an admission fee was charged by the High School does not make the transaction an enterprise for profit."). The test for whether a government agency is performing a governmental function or a proprietary function is whether the agency is "carrying out a function integral to state government," *Kentucky Center for the Arts Corp. v. Berns*, Ky., 801 S.W.2d 327, 332 (1990), or whether it is "engaged in a business of a sort theretofore engaged in by private persons or corporations for profit." *Yanero, supra* note 1, at 520 (quotation omitted). Applying this test, the sponsorship and conduct of an interscholastic athletic tournament by a board of education is a governmental function. The receipt of income from admission fees and sales of refreshments and event programs

---

**3.** When Baker, Pirtle and *Clark* were decided, municipalities were cloaked with governmental immunity. That is no longer true, *Gas Service Co. v. City of London*, supra, *Haney v.*

*City of Lexington, supra,* but that fact does not change the principle that the operation of a public park is a governmental function.

to defray expenses or even to provide additional financial support for other school activities did not convert this interscholastic athletic event into a proprietary function. *Richards,* 83 N.W.2d at 653; *Mokovich,* 225 N.W. at 294. The complaints against the Meade County Board of Education were properly dismissed.

## III. INDIVIDUAL LIABILITY.

The county judge/executive, the magistrates, the superintendent of schools, and the members of the board of education were not sued in their individual capacities. *See Calvert Invs., Inc., v. Louisville & Jefferson County Metro. Sewer Dist.,* Ky., 805 S.W.2d 133, 139 (1991). In fact, they were specifically sued "in their official capacities." Thus, each is cloaked with the same immunity as the government or agency he/she represents. *Yanero,* 65 S.W.3d at 522; *Franklin County v. Malone,* 957 S.W.2d at 201. The complaints against the individual defendants were properly dismissed

## IV. UNKNOWN DEFENDANTS.

If the unknown defendants who either improperly constructed or failed to properly maintain the bleachers at Meade Olin Park *were* employees of Meade County or the Meade County Board of Education (as opposed to, *e.g.,* independent contractors), and if they had been identified and sued within the period of limitations, judgments could have been obtained against them individually for the negligent performance of a ministerial duty. *Yanero, supra,* at 522 ("An act is not necessarily 'discretionary' just because the officer performing it has some discretion with respect to the means or method to be employed."). If they had been county employees, Meade County could have been required to pay the cost of their defense and some portion

or all of the judgments rendered against them pursuant to KRS 65.2005.

Since the unknown defendants were not sued within the period of limitations, Appellants' ability to maintain an action against them depends upon whether the amended complaint relates back to the filing of the original complaint. CR 15.03 provides, *inter alia:*

(1) Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

(2) An amendment changing the party against whom a claim is asserted relates back if the condition of paragraph (1) is satisfied *and,* within the period provided by law for commencing the action against him, the party to be brought in by amendment (a) *has received such notice of* the institution of the action that he will not be prejudiced in maintaining his defense on the merits, *and* (b) *knew or should have known* that, *but for a mistake concerning the identity of the proper party,* the action would have been brought against him.

. . .

CR 15.03(1) and (2) are identical to Federal Rule of Civil Procedure 15(c) except with respect to internal enumeration. The United States Supreme Court has summarized the federal rule as follows:

Relation back is dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have

been brought against it; and (4) *the second and third requirements must have been fulfilled within the prescribed limitations period.*

*Schiavone v. Fortune,* 477 U.S. 21, 29–30, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986) (emphasis added). Here, the first requirement is satisfied because the claim made in the amended complaint arises out of the conduct set forth in the original complaint. Thus, we turn to the second and third requirements. *Nolph v. Scott,* Ky., 725 S.W.2d 860 (1987), was a medical malpractice action filed within the period of limitations against a hospital, two named physicians, and "other unknown defendants." Warning order service was obtained against the "unknown defendants" also during the period of limitations. CR 4.05, 4.06, 4.07. Upon learning the ientity of an "unknown defendant," the plaintiff attempted to amend her complaint after the expiration of the period of limitations to name that person as a party defendant. *Nolph* held that the amended complaint did not relate back to date of the original complaint because there was no evidence that the new defendant had actual notice of the lawsuit within the period of limitations. *Id.* at 862, citing *Schiavone, supra.*

▆▆▆ Appellants assert that the filing of the original complaint against the employers of the unknown defendants put those defendants on "constructive" notice that an action might be filed against them, citing *Clark v. Young,* Ky.App., 692 S.W.2d 285, 288–89 (1985), *Funk v. Wagner Machinery, Inc.,* Ky.App., 710 S.W.2d 860, 861–62 (1986), and *Halderman v. Sanderson Forklifts Co., Ltd.,* Ky.App., 818 S.W.2d 270, 272–73 (1991), in all of which our Court of Appeals applied the so-called "identity of interest" theory enunciated in *Kirk v. Cronvich,* 629 F.2d 404, 408 n. 4 (5th Cir.1980).

However, the implied (not constructive) "should have known" notice referred to in CR 15.03(2)(b), which gave rise to the "identity of interest" exception, applies only when the plaintiff has *mistakenly* sued the wrong party and the right party "knew or should have known" of that fact. Kurt A. Phillips, 6 *Kentucky Practice: Rules of Civil Procedure Annotated,* CR 15.03, cmt. 4, at 316 (West 1995); *cf. Pelphrey v. Cochran,* Ky., 454 S.W.2d 675, 678 (1970). *Pelphrey,* decided the next year after adoption of CR 15.03 held that actual notice was required where there was no mistake. Mistake appears to have been the case in *Clark,* 692 S.W.2d at 286–87 (action filed against corporate lessee of truck and driver instead of lessor where driver/tortfeasor was employee of lessor, not lessee), *Funk,* 710 S.W.2d at 861 (action filed against sales corporation instead of product manufacturer), and *Halderman,* 818 S.W.2d at 271 (action filed against subsidiary corporation instead of parent corporation). Here, however, there was no mistake. Appellants' original complaint sought to hold the county and the board of education vicariously liable for the negligence of their respective "servants, agents and employees." Thus, Appellants knew when the original complaint was filed that the tortious conduct was committed by the same servants, agents, and employees that they sought to hold liable in their amended complaint. Absent mistake, the "identity of interest" exception to the requirement of actual notice does not apply.

Appellants assert that actual notice should be presumed because "it is inconceivable that either the fiscal court or the board of education, who had been notified of the tortious conduct of their employees, would fail to notify those same employees in an effort to rectify future hazards." (Brief, at 35.) That assumes that the county and board did not receive notice of the accident until after suit was filed, an

even more inconceivable fact given that Mrs. Schwindel's affidavit states that she was transported immediately from the accident scene to a hospital where surgery was performed. More likely, the county and board were notified of the accident shortly after it occurred and rectified the hazard at that time. How else would Mrs. Schwindel have ascertained that her accident was caused by a failure to properly bolt the foot rail to the bleachers as opposed to, *e.g.*, a defective bolt or a defective foot rail?

There is no proof that the unknown defendants were still employed by the county or board on the day this action was filed. But if they were, we would not presume that they were notified of the lawsuit during the eleven hours and thirty-three minutes remaining after it was filed and before the period of limitations expired. The superintendent of the board of education was not served with process until three days after the expiration of the period of limitations. And although the county judge/executive was served on the date the lawsuit was filed, the time of service is unknown and process was not returned until 8:32 a.m. the following morning. Appellants were given the opportunity to obtain discovery, during which they might have proven actual notice, and did not avail themselves of that opportunity. No presumption arises from these facts that the unknown defendants received actual notice of the filing of this action before the expiration of the period of limitations. We further note that not only was the action against the unknown defendants not commenced within the period of limitations, it was not commenced at all. CR 3 ("A civil action is commenced by the filing of a complaint with the court and the issuance of a summons or warning order thereon in good faith"); CR 4.05(e) (unknown defendant can be constructively served by warning order). The amended complaint against the unknown defendants was properly dismissed.

Accordingly, the summary judgment and the order of dismissal entered by the Meade Circuit Court are affirmed.

All concur.