RENDERED: MAY 14, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1784-MR

SOUTHPOINTE PARTNERS, LLC                                              APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE JUDITH E. MCDONALD-BURKMAN, JUDGE
ACTION NO. 19-CI-002529


LOUISVILLE METRO                                                      APPELLEES
GOVERNMENT; LOUISVILLE
METRO PLANNING COMMISSION;
VINCE JARBOE, IN HIS OFFICIAL
CAPACITY AS A MEMBER OF THE
LOUISVILLE METRO PLANNING
COMMISSION AND IN HIS
INDIVIDUAL CAPACITY; DAVID
TOMES, IN HIS OFFICIAL
CAPACITY AS A MEMBER OF THE
LOUISVILLE METRO PLANNING
COMMISSION AND IN HIS
INDIVIDUAL CAPACITY; ROBERT
PETERSON, IN HIS OFFICIAL
CAPACITY AS A MEMBER OF THE
LOUISVILLE METRO PLANNING
COMMISSION AND IN HIS
INDIVIDUAL CAPACITY; EMMA
SMITH, IN HER OFFICIAL
CAPACITY AS A MEMBER OF THE
LOUISVILLE METRO PLANNING
COMMISSION AND IN HER

INDIVIDUAL CAPACITY; LULA HOWARD, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LOUISVILLE METRO PLANNING COMMISSION AND IN HER INDIVIDUAL CAPACITY; MARILYN LEWIS, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LOUISVILLE METRO PLANNING COMMISSION AND IN HER INDIVIDUAL CAPACITY; JEFF BROWN, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LOUISVILLE METRO PLANNING COMMISSION AND IN HIS INDIVIDUAL CAPACITY; RICH CARLSON, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LOUISVILLE METRO PLANNING COMMISSION AND IN HIS INDIVIDUAL CAPACITY; RUTH DANIELS, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LOUISVILLE METRO PLANNING COMMISSION AND IN HER INDIVIDUAL CAPACITY; DONALD ROBINSON, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LOUISVILLE METRO PLANNING COMMISSION AND IN HIS INDIVIDUAL CAPACITY; EMILY LIU, IN HER INDIVIDUAL CAPACITY; JOE REVERMAN, IN HIS INDIVIDUAL CAPACITY; JEFF O'BRIEN, IN HIS INDIVIDUAL CAPACITY; LACEY GABBARD, IN HER INDIVIDUAL CAPACITY; JODY MEIMAN, IN HIS INDIVIDUAL CAPACITY; KELLY JONES, IN HIS INDIVIDUAL

CAPACITY; AND BETH ALLEN, IN
HER INDIVIDUAL CAPACITY


AND                              NO. 2020-CA-0195-MR


SOUTHPOINTE PARTNERS, LLC                              APPELLANT


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE ANN BAILEY SMITH, JUDGE
                    ACTION NO. 19-CI-006441


VINCE JARBOE; BETH ALLEN;                              APPELLEES
DAVID TOMES; DONALD
ROBINSON; EMILY LIU; EMMA
SMITH; JEFF BROWN; JEFF
O'BRIEN; JODY MEIMAN; JOE
REVERMAN; KELLY JONES;
LACEY GABBARD; LULA
HOWARD; MARILYN LEWIS; RICH
CARLSON; ROBERT PETERSON;
AND RUTH DANIELS, ALL IN
THEIR INDIVIDUAL CAPACITIES


                    OPINION
                    AFFIRMING

                ** ** ** ** **

BEFORE:  JONES, LAMBERT, AND K. THOMPSON, JUDGES.

JONES, JUDGE:  SouthPointe Partners, LLC ("Southpointe") appeals the judgments of Divisions Nine and Thirteen of the Jefferson Circuit Court.

SouthPointe originally filed suit against the Louisville Metro Government, the Louisville Metro Planning Commission (the "Planning Commission"), and its members, Vince Jarboe, David Tomes, Robert Peterson, Emma Smith, Lulu Howard, Marilyn Lewis, Jeff Brown, Rich Carlson, Ruth Daniels, and Donald Robinson in their official capacities; this action was assigned to Jefferson Circuit Court Division Nine.  Therein, SouthPointe sought to appeal a decision of the Planning Commission pursuant to KRS[1] 100.347 and asserted the following additional claims as against all defendants:  (1) declaratory and injunctive relief; (2) negligence; (3) violation of 42 U.S.C.[2] § 1983; and (4) a claim that Louisville's Land Development Code is unconstitutionally vague.  After finding in SouthPointe's favor with respect to its KRS 100.347 appeal, the circuit court dismissed the remainder of SouthPointe's claims and denied it leave to amend its complaint to add claims against each of the Planning Commission members in their individual capacities.

Subsequently, SouthPointe filed a second, separate suit against the Planning Commission members in their individual capacities as well as against

---

[1] Kentucky Revised Statutes.

[2] United States Code.

seven other advisory officials, Emily Liu, Joe Reverman, Jeff O'Brien, Lacey Gabbard, Jody Meiman, Kelly Jones, and Beth Allen. This suit, which was based on the same conduct involved in the Division Nine suit, was assigned to the Division Thirteen of the Jefferson Circuit Court. This suit was ultimately dismissed after the circuit court determined that it arose from the same common nucleus of operative facts as the Division Nine suit, and therefore, was an impermissible attempt to claims split by SouthPointe.

On appeal, SouthPointe challenges: (1) the dismissal of its claims in the Division Nine suit; (2) the circuit court's denial of its motion to amend its complaint in the Division Nine suit; and (3) the circuit court's dismissal of the Division Thirteen suit. Having reviewed the record, and being otherwise sufficiently advised, we affirm as to each assignment of error.

## I. BACKGROUND

SouthePointe, a commercial developer, is currently in the process of constructing SouthPointe Commons, a more than $80 million development in Fern Creek, Jefferson County, Kentucky. The Planning Commission approved the development in 2010, including the name of the main street of the development, "SouthPointe Boulevard." The actual construction of the development was delayed for several years as a result of unrelated litigation, but SouthPointe's predecessor-in-interest and managing member, Bardstown Capital Corporation,

eventually won that litigation. Subsequently, in 2018, SouthPointe applied for the approval of a minor plat ("the Minor Plat") in the development using its previously approved street name.

While reviewing the Minor Plat, the Planning Commission discovered a preexisting street named "Southpointe Boulevard" elsewhere in town. The Planning Commission admitted that this was an oversight in its initial 2010 review but refused to approve the Minor Plat until SouthPointe changed the duplicitous street name. However, the Planning Commission also rejected SouthPointe's suggested alternative, "SouthPointe Commons Boulevard," because it was supposedly two letters too long according to a 16-letter limitation for public street names found in the Land Development Code.

Yet again, the Planning Commission asked SouthPointe to rename its main street. However, this time, SouthPointe refused, and the Planning Commission allowed SouthPointe to apply for a waiver of the 16-letter requirement. SouthPointe did so, and a hearing was scheduled on the matter. The Louisville Department of Emergency Services ("Emergency Services") objected to the waiver by written letter, asserting a number of public safety concerns,[3] but did not attend the hearing.

---

[3] Emergency Services alleged that the 16-letter limitation was necessary for maximizing visibility of street signs for emergency responders, due to letter size and the susceptibility of long signs to twist or bend in heavy winds.

On April 18, 2019, the Planning Commission held a second public hearing to consider SouthPointe's waiver request. This time, an Emergency Services representative appeared. Six of the ten Planning Commission members, David Tomes, Robert Peterson, Lulu Howard, Jeff Brown, Rich Carlson, and Ruth Daniels, were also present. The Planning Commission voted 4-2 that it did not have the authority to grant the requested waiver because of the purported safety and welfare requirement within the Land Development Code. The present members of the Planning Commission acknowledged that the 16-letter requirement only applied to public street names but expressed their concern on the record with regard to proceeding against the objections of Emergency Services. The Planning Commission then voted 6-0 to approve the Minor Plat – on the condition that SouthPointe change the name of its main street to an unclaimed name conforming with the 16-letter limitation.

On April 23, 2019, SouthPointe filed case No. 19-CI-002529 in Jefferson Circuit Court. This action was assigned to Division Nine. SouthPointe brought the following claims: (1) an appeal of the Planning Commission's decision pursuant to KRS 100.347; (2) a claim for declaratory and injunctive relief; (3) a negligence claim; (4) a 42 U.S.C. § 1983 claim; and (5) a claim that Louisville's Land Development Code is unconstitutionally vague. SouthPointe sued Louisville Metro Government, the Planning Commission, and all of the

Planning Commission's members in their official capacities (collectively referred to as "Louisville Metro"), including those who did not attend the April 18, 2019, meeting.

On June 5, 2019, SouthPointe moved for partial summary judgment on its KRS 100.347 appeal based upon the administrative record. On July 22, 2019, SouthPointe appeared at the appointed time for the hearing on its motion for partial summary judgment; however, the County Attorney representing Louisville Metro did not appear until the trial court summoned him by telephone. The circuit court refused to grant Louisville Metro a continuance and, on July 26, 2019, granted SouthPointe summary judgment on its KRS 100.347 appeal, ordering Louisville Metro to approve the Minor Plat so that construction could move forward.

On August 13, 2019, Louisville Metro moved for summary judgment on the remaining claims against it, arguing that it was protected from paying monetary damages by sovereign immunity. SouthPointe disagreed, arguing that the Claims Against Local Government Act (CALGA) contained a statutory waiver of immunity, and on August 21, 2019, moved for leave to amend its complaint. SouthPointe's proposed First Amended Complaint sought to name the Planning Commission members in their individual capacities as defendants and add six more defendants to SouthPointe's negligence claim, in both their official and individual

capacities: Emily Liu, Joe Reverman, and Lacey Gabbard (three advisory-type

officials with Louisville Metro Planning and Design Services), and Jody Meiman,

Kelly Jones, and Beth Allen (three advisory officials with Louisville Metro

Emergency Services). The proposed First Amended Complaint alleged that,

together, the individual defendants "refused to approve" SouthPointe's Minor Plat

because of its 18-character street name and denied the requested waiver.

SouthPointe alleged that the individual defendants had breached their "duty to

perform or assist in the performance" of approving the Minor Plat in a timely

manner and that none of these defendants was immune from liability.

On September 13, 2019, Division Nine denied SouthPointe's motion

to amend, explaining that amendment was futile as the claims were destined for

dismissal:

> CR[4] 15.01 states that, ". . . a party may amend his pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." CR 15 makes no reference to post-verdict motions other than the language of CR 15.02 which allows amendments to conform to the evidence. This portion of the rule is interpreted in *Lawrence v. Marks*, 355 S.W.2d 162 (Ky. 1961), wherein the Court stated that, "The trial court has a broad discretion in granting leave to amend, but the discretion is not without limitations. In *Garrison v. Baltimore & O. R. Co.*, D.C.Pa.1957, 20 F.R.D. 190, the court indicated that significant factors to be considered in determining

---

[4] Kentucky Rules of Civil Procedure.

whether to grant leave to amend are timeliness, excuse for delay, and prejudice to the opposite party."

Defendants assert that, in this case, justice does not require leave to amend since SouthPointe has no viable negligence or 42 U.S.C. 1983 claims against the proposed defendants. They contend that none of the seven new defendants voted on the SouthPointe development and four Planning Commission Members did not even attend the April 18, 2019 meeting. They further argue that KRS 100.347 does not provide for monetary damages. Defendants cite the case of *Robbins v. New Cingular Wireless, PSC, LLC*, 854 F.3d 315 (6th Cir. 2017), in which the unsuccessful litigants in an administrative appeal then filed a civil action seeking monetary damages alleging negligence, negligence per se, gross negligence and nuisance. The Court concluded that, "[b]ecause [KRS 100.347] offers plaintiffs an adequate and excessive remedy (i.e. appeal to a Kentucky court) for grievances related to a planning board's decision, a court must dismiss any collateral attack that seeks solely to rehash the same complaints."

The *Robbins* case deals with the dismissal and not with the granting of a motion to amend. However, recognized limitations upon amendments include unreasonable delay and *futility of amendment.* [Emphasis added] *Shah v. American Synthetic Rubber Corp.*, 655 S.W.2d 489 (Ky. 1983); *First National Bank of Cincinnati v. Hartman*, 747 S.W.2d 614 (Ky. App. 1988). Given the arguments of Defendants with regard to the propriety of SouthPointe's claims, the Court finds that SouthPointe's Motion to Amend is not warranted; even if permitted there are valid grounds for granting a motion to dismiss.

Record on Appeal ("R.") at 191-92.

SouthPointe subsequently filed a motion for reconsideration, which the circuit court denied on October 7, 2019:

> Plaintiff continues to argue that it may bring its tort claims in addition to its request for relief pursuant to KRS 100.347. This is simply not the case. *Robbins v. New Cingular Wireless, PSC, LLC*, 854 F.3d 315 (Ky. 2017) clearly provides that KRS 100.347 is the exclusive remedy for one aggrieved by the actions of the Planning Commission. The statute does not provide for tort damages.
>
> Similarly, Plaintiff once again argues that its 42 U.S.C. § 1983 claims are not frivolous. As noted in Defendant's Response, "A federal cause of action alleged under 42 U.S.C. § 1983 or otherwise, simply does not necessarily arise from every wrong which is allegedly committed under color of state law. *Studen v. Beebe*, 588 F.2d 560 (6th Cir. 1978)." The *Studen* case also arises out of a zoning dispute. Similarly, the case of *Kentner v. Martin County*, 929 F. Supp. 1482 (S.D. Fla. 1996) held that the actions of the zoning authorities did not rise to the level of a constitutional claim. The delay alleged by Plaintiff certainly does not rise to that level.
>
> While *Snyder v. Owensboro*, 528 S.W.2d 663 (Ky. 1975) held that approval of a plat is a ministerial act, the case is distinguishable. It did not apply to a claim for damages against the Planning Commission and the application of qualified immunity. The governing law on the issue of qualified immunity is set forth in *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2002), in which the Court stated that, "when sued in their individual capacities, public officers and employees, enjoy only qualified immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. [Citation omitted]. Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or

functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, [Citation omitted] (2) in good faith; and (3) within the scope of the employee's authority." Further, the Court noted that, "An act is not necessarily "discretionary" just because the officer performing it has some discretion with respect to the means or methods employed." Conversely, a ministerial action is "one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." As argued by Defendant, the officials herein performed a discretionary function when they considered and voted upon the plat herein.

The elements of negligence are set forth in *Pathways, Inc. v. Hammons*, 113 S.W.3d 85 (Ky. 2003). In order to show negligence a plaintiff must prove (1) duty; (2) breach of standard of care; (3) causation; and (4) injury. In this case no authority has been cited to the Court which holds that officers who did not participate in the administrative hearing are responsible to a plaintiff aggrieved by a Planning Commission decision. Thus, Plaintiff is unable to establish the first element of negligence.

The Court has no basis to vacate its previous Opinion and Order. Justice does not require leave to amend where the claims asserted are futile. Such claims are futile where, as here, they will be defeated by a properly pleaded motion to dismiss.

R. at 234-36.

Consequently, on October 15, 2019, SouthPointe filed a second claim, case No. 19-CI-006441, against the sixteen Louisville Metro officers and employees in their individual capacities, which was assigned to Division Thirteen

of the Jefferson Circuit Court. SouthPointe asserted the same negligence and 42 U.S.C. § 1983 claims for monetary damages as well as a negligence *per se* claim based upon the same events as in its Division Nine suit. SouthPointe acknowledged the motion for summary judgment in case No. 19-CI-002529 pending before Division Nine but asserted that its suit before Division Thirteen was the first time that claims were brought against the individual-capacity defendants. Louisville Metro filed a motion to consolidate the new Division Thirteen case with the original claim pending in Division Nine, which SouthPointe did not oppose.

However, on November 4, 2019, before the claims could be consolidated, Division Nine granted Louisville Metro summary judgment on the remaining claims:

> Metro is entitled to claim sovereign immunity on the grounds that no action may be brought against the state or a county without consent or waiver. *Yanero v. Davis*, 658 S.W.3d 510 (Ky. 2001). The same immunity is granted to consolidated local governments. *Jewish Hosp. Healthcare Services, Inc. v. Louisville/Jefferson Metro Government*, 270 S.W.3d 905 (Ky. App. 2008). Specifically, immunity has been afforded to Planning Commissions. *Northern Area Planning Commission v. Cloyd*, 332 S.W.3d 91 (Ky. App. 2010). Individual members are entitled to immunity when sued in their official capacities. *Schwindel v. Meade County*, 113 S.W.3d 159 (Ky. 2003). Metro also contends that pursuant to KRS 100.347 no monetary damages are available. The case of *Snyder v. Owensboro*, 528 S.W.2d 663 (Ky. 1975) specifically holds that failure to timely

-13-

consider and approve a minor plat is ministerial in nature. KRS 100.281 (1) provides for such approval to occur in 90 days.

The [CALGA] states that nothing "shall be construed to exempt a local government from liability for negligence arising out of acts or omissions of its employees in carrying out their ministerial duties." KRS 65.2003. However, CALGA does not provide for a waiver of immunity. *Schwindel, supra*. Such a waiver may only be made by the General Assembly. *Department of Corrections v. Furr*, 23 S.W.3d 615 (Ky. 2000). KRS 100.347 provides the exclusive remedy for those aggrieved by actions or inactions of the Planning Commission . . . .

The Court finds that the Planning Commission and its members are immune. The *Schwindel* case specifically holds that CALGA does not act as a waiver of immunity for the tortious performance of ministerial acts. The approval of a minor plat is just such a ministerial act. *Snyder, supra*.

IT IS HEREBY ORDERED AND ADJUDGED that Defendant's motion for partial summary judgment is GRANTED on the grounds of sovereign immunity.

R. at 239-41.

Thereafter, on January 30, 2020, Division Thirteen dismissed SouthPointe's suit, finding that SouthPointe's claims in the Division Thirteen suit arose "from the same common nucleus of operative facts as those in [the case before Division Nine], and constitute[d] [SouthPointe's] attempt to impermissibly split its cause of action." R. at 354-56.

On December 2, 2019, SouthPointe filed its notice of appeal in case No. 19-CI-002529, and on February 3, 2020, filed its notice of appeal in case No. 19-CI-006441. The two cases were later consolidated for appellate purposes.

## II.    STANDARD OF REVIEW

"[S]ummary judgment is to be cautiously applied and should not be used as a substitute for trial" unless "there is no legitimate claim under the law and it would be impossible to assert one given the facts." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 483 (Ky. 1991); *Shelton v. Kentucky Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 916 (Ky. 2013), *as corrected* (Nov. 25, 2013). A motion for summary judgment should be granted "[o]nly when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor" even when the evidence is viewed in the light most favorable to him. *Steelvest*, 807 S.W.2d at 482; *Shelton*, 413 S.W.3d at 905. To survive a properly supported summary judgment motion, the opposing party must have presented "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest*, 807 S.W.2d at 482; *see also Neal v. Welker*, 426 S.W.2d 476, 479 (Ky. 1968) ("When the moving party has presented evidence showing that . . . there is no genuine issue of any material fact, it becomes incumbent upon the adverse party to counter that evidentiary showing by some

form of evidentiary material reflecting that there is a genuine issue pertaining to a material fact.").

"The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing CR 56.03). Because there are no factual findings at issue, the appellate court reviews that trial court's decision *de novo*. *Shelton*, 413 S.W.3d at 905.

Likewise, we review a circuit court's granting of a motion to dismiss *de novo*. *Benningfield v. Pettit Env't, Inc.*, 183 S.W.3d 567, 570 (Ky. App. 2005).

> A motion to dismiss should only be granted if "it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Pari-Mutuel Clerks' Union v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977). When ruling on the motion, the allegations in "the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true." *Gall v. Scroggy*, 725 S.W.2d 867, 868 (Ky. App. 1987). In making this decision, the trial court is not required to make any factual findings. *James v. Wilson*, 95 S.W.3d 875, 884 (Ky. App. 2002). Therefore, "the question is purely a matter of law." *Id.*

*Id.*

Our standard of review of a denial of leave to amend a complaint is whether the circuit court abused its discretion. *Kenney v. Hanger Prosthetics &*

*Orthotics, Inc.*, 269 S.W.3d 866, 869 (Ky. App. 2007). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

### III. ANALYSIS

SouthPointe appeals three rulings: (1) Division Nine's denial of SouthPointe's motion for leave to amend its original complaint to add the individual-capacity claims; (2) Division Nine's summary judgment for Louisville Metro on sovereign immunity grounds; and (3) Division Thirteen's dismissal of SouthPointe's individual-capacity claims.

We first address SouthPointe's contention that Division Nine abused its discretion in denying SouthPointe's motion for leave to amend its complaint. More specifically, we must determine whether KRS 100.347 provides an exclusive remedy for claimants aggrieved by the final action of a planning commission. For the following reasons, we hold that Division Nine did not abuse its discretion in denying SouthPointe's motion for leave to amend its complaint to include the seventeen individual-capacity defendants.

KRS 100.347(2) provides:

Any person or entity claiming to be injured or aggrieved by any final action of the planning commission shall appeal from the final action to the Circuit Court of the county in which the property, which is the subject of the

-17-

commission's action, lies. Such appeal shall be taken within thirty (30) days after such action. Such action shall not include the commission's recommendations made to other governmental bodies. All final actions which have not been appealed within thirty (30) days shall not be subject to judicial review. Provided, however, any appeal of a planning commission action granting or denying a variance or conditional use permit authorized by KRS 100.203(5) shall be taken pursuant to this subsection. In such case, the thirty (30) day period for taking an appeal begins to run at the time the legislative body grants or denies the map amendment for the same development. The planning commission shall be a party in any such appeal filed in the Circuit Court.

SouthPointe maintains that "[w]hile these officials' failure to perform a ***discretionary*** act may only give rise to a KRS 100.347 appeal, their failure to timely perform the ***ministerial*** act of approving the Minor Plat gives rise to ***both*** a KRS 100.347 appeal and tort claims." Appellant's Brief ("Br.") at 12 (emphasis in original). SouthPointe provides no supporting authority for the creative contention that KRS 100.347 distinguishes between ministerial and discretionary acts, and we decline to assume that undertaking.

SouthPointe is correct that the Planning Commission members' approval of a minor plat is a ministerial duty. "*Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001), provides the framework for deciding whether a public officer or employee is afforded immunity from tort liability." *Ritchie v. Turner*, 559 S.W.3d 822, 831 (Ky. 2018). "[W]hen sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection

-18-

from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero*, 65 S.W.3d at 521. Under *Yanero*, "an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* at 522. As explained by *Snyder*, 528 S.W.2d 663, it is black letter law that the approval of a minor plat like that of SouthPointe is a ministerial duty. *Id.* at 664 ("[T]he approval of subdivision plats is a ministerial act. That our statute so intends is made obvious by the provision of KRS 100.281 that the planning commission may delegate to its secretary or any other officer or employee the power to approve plats.").

However, SouthPointe's reliance on *Yanero* for support in its proposition that an official's failure to timely perform the ministerial act of approving a minor plat gives rise to both a KRS 100.347 appeal and tort claims is misplaced. In *Yanero*, the Kentucky Supreme Court held that a coach's duty to supervise students during school-sponsored activities "was a ministerial, rather than a discretionary, function in that it involved only the enforcement of a known rule requiring that student athletes wear batting helmets during baseball batting practice." *Yanero*, 65 S.W.3d at 529. The *Yanero* plaintiffs brought a variety of

-19-

tort claims for the failed performance of that ministerial duty; they did not bring a statutory claim, nor was one available to them as an exclusive remedy. *See id.* at 517. *Yanero* does not address claims brought under Kentucky statutory law; therefore, the distinction between whether a statute precludes additional common law claims lies elsewhere.

Under Kentucky law, "[w]here the statute both declares the unlawful action and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Waugh v. Parker*, 584 S.W.3d 748, 753 (Ky. 2019) (citing *Grzyb v. Evans*, 700 S.W.3d 399, 304 (Ky. 1985)) (other internal citations omitted); *see also Hill v. Kentucky Lottery Corp.*, 327 S.W.3d 412, 421 (Ky. 2010); *Mendez v. University of Kentucky Board of Trustees*, 357 S.W.3d 534, 545 (Ky. App. 2011). Likewise, under federal law, "where . . . 'a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies.'" *Sandoz Inc. v. Amgen Inc.*, 137 S. Ct. 1664, 1675 (2017) (quoting *Karahalios v. Federal Employees*, 489 U.S. 527, 533 (1989)).

Here, KRS 100.347 provides for a remedy, just not the remedial or monetary damages SouthPointe desires. Because KRS 100.347 "offers plaintiffs an adequate and exclusive remedy (i.e., appeal to a Kentucky court) for grievances related to a planning board's decision, a court must dismiss any collateral attack

that seeks solely to rehash the same complaints." *Robbins*, 854 F.3d at 321; *Warren County Citizens for Managed Growth, Inc. v. Board of Comm'rs*, 207 S.W.3d 7, 17 (Ky. App. 2006) (citations omitted) ("Because [KRS 100.347] affords an adequate remedy, a separate declaratory judgment action is not appropriate.").

With regard to whether a plaintiff may bring claims under KRS 100.347 and common law to address the same alleged wrong done by a planning commission, we find *Robbins v. New Cingular Wireless PCS, LLC*, *supra*, to be persuasive.[5] In that case, several Kentucky residents brought an action in state court against AT&T, the holder of a permit authorizing the construction of a cellphone tower near the residents' homes. *Id.* at 318. The residents challenged the planning commission's decision to grant the permit under KRS 100.347 in state circuit court. *Id.* Before the circuit court could dismiss the appeal, the residents filed a second, separate lawsuit against AT&T asserting claims for negligence, negligence *per se*, gross negligence, and nuisance.[6] *Id.* at 318. The plaintiffs' tort claims were dismissed for failure to state a claim, in part because the claims were barred by state law. *Id.* at 318-19. On appeal, the *Robbins* plaintiffs alleged that

---

[5] State courts are not bound by the decisions of lower federal courts; "[r]ather, the approach taken by federal courts may be viewed as persuasive but it is not binding." *U.S., ex rel. U.S. Attorneys ex rel. Eastern, Western Districts of Kentucky v. Kentucky Bar Ass'n*, 439 S.W.3d 136, 147 (Ky. 2014).

[6] New Cingular removed the case to federal court based on diversity jurisdiction. *Id.*

their "tort claims amount to more than a second shot at appealing the Commission's decision because they allege harms independent" of the Commission's decision and that because KRS 100.347 "authorizes a court to review planning decisions, but not 'property damages and common law tort damages due to an incompatible land use,' their tort claims do not attack the Commission's decision." *Id*. at 322. The Sixth Circuit dismissed both arguments because the *Robbins* plaintiffs could not show that "their harms [arose] from anything other than the Commission's decision." *Robbins*, 854 F.3d at 321.

SouthPointe attempts to distinguish *Robbins* from the present case by arguing that, unlike the *Robbins* plaintiffs who lost on their KRS 100.347 appeal, SouthPointe won its appeal. SouthPointe argues that the *Robbins* plaintiffs impermissibly "attempted to use tort claims to collaterally attack the planning commission's discretionary approval of the tower permit." Appellant's Br. at 13 (*Robbins*, 854 F.3d at 318, 320-22). Indeed, the procedural histories of these two cases are different; however, ultimately, the fact that SouthPointe prevailed on its KRS 100.347 appeal is irrelevant because it is not the issue of collateral attack that bars SouthPointe's tort and 42 U.S.C. § 1983 claims. Rather, the question of whether a plaintiff like SouthPointe is permitted to bring additional claims hinges on whether a Kentucky statute provides both the unlawful action and the remedy. KRS 100.347 does. Like the *Robbins* plaintiffs, SouthPointe has not shown that its

harms arise from anything other than a planning commission decision and is therefore limited to its statutory action pursuant to KRS 100.347. *See* G*reater Cincinnati Marine Service, Inc. v. City of Ludlow*, 602 S.W.2d 427 (Ky. 1980) (holding that claims which are broader in scope than implicated within the context of a zoning appeal may be brought by a separate complaint).

Consequently, SouthPointe's proposed amendments to its complaint including the additional individual-capacity defendants are futile. "Although amendments should be freely allowed, the trial court has wide discretion and may consider such factors as the failure to cure deficiencies by amendment or the futility of the amendment itself." *First Nat'l Bank of Cincinnati v. Hartman*, 747 S.W.2d 614, 616 (Ky. App. 1988). "The decision to grant or deny leave to amend [a complaint] is ultimately left to the discretion of the trial court, which will not be disturbed absent an abuse of that discretion." *Nami Res. Co., L.L.C. v. Asher Land and Min., Ltd.*, 554 S.W.3d 323, 343 (Ky. 2018) (quoting *Kenney*, 269 S.W.3d at 869-70). Division Nine denied SouthPointe's motion for leave to amend its complaint, recognizing that there are "limitations upon amendments including unreasonable delay and futility of amendment." R. at 192. SouthPointe moved to amend its complaint for the sole purpose of pursuing its tort and 42 U.S.C. § 1983

claims – in context of this case no amendment could have made those claims viable in light of the exclusive remedy offered by KRS 100.347.[7]

Next, we address the issue of whether Division Nine erred in granting summary judgment on SouthPointe's damages claims in favor of Metro and its official-capacity defendants on sovereign immunity grounds. While this argument is ultimately moot because of the exclusive remedy provided by KRS 100.347, we wish to provide a brief clarification regarding Louisville Metro and the Planning Commission's immunity.

"Louisville Metro is a government entity" entitled to sovereign immunity. *Louisville/Jefferson County Metro Gov't v. Cowan*, 508 S.W.3d 107, 109 (Ky. App. 2016); *see Lexington-Fayette Urban County Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004) ("[U]rban county governments constitute a new classification of county government . . . entitled to sovereign immunity"). "A consolidated local government shall be accorded the same sovereign immunity granted counties, their agencies, officers, and employees." KRS 67C.101(2)(e). "Sovereign immunity affords the state absolute immunity from suit and 'extends to public officials sued in their representative (official) capacities, when the state is the real party against which relief in such cases is sought.'" *Cowan*, 508 S.W.3d at

---

[7] For the same reason, SouthPointe's damage claims against Louisville Metro and the official-capacity defendants are precluded by KRS 100.347.

109 (quoting *Yanero*, 65 S.W.3d at 517-18).  A waiver of sovereign immunity may only be made by the General Assembly.  *Furr*, 23 S.W.3d at 616.

SouthPointe contends that CALGA, codified by KRS 65.200, *et seq.*, waives Louisville Metro's sovereign immunity.  Specifically, SouthPointe relies upon KRS 65.2003, which states:

> Notwithstanding KRS 65.2001, a local government shall not be liable for injuries or losses resulting from:
>
> (1) Any claim by an employee of the local government which is covered by the Kentucky workers' compensation law;
>
> (2) Any claim in connection with the assessment or collection of taxes;
>
> (3) Any claim arising from the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority or others, exercise of judgment or discretion vested in the local government, which shall include by example, but not be limited to:
>
> > (a) The adoption or failure to adopt any ordinance, resolution, order, regulation, or rule;
> >
> > (b) The failure to enforce any law;
> >
> > (c) The issuance, denial, suspension, revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization;
> >
> > (d) The exercise of discretion when in the face of competing demands, the local government determines whether and how to utilize or apply existing resources; or

(e) Failure to make an inspection.

> *Nothing contained in this subsection shall be construed*
> *to exempt a local government from liability for*
> *negligence arising out of acts or omissions of its*
> *employees in carrying out their ministerial duties.*

(Emphasis added.)

According to SouthPointe, the final line of KRS 65.2003 functions as a waiver of Louisville Metro's immunity. However, our Supreme Court previously addressed SouthPointe's very argument and rejected it in *Schwindel v. Meade County*, 113 S.W.3d 159 (Ky. 2003). Our Supreme Court explained that "[p]er KRS 65.200(3), CALGA applies not only to counties but also to municipalities and taxing districts," although, significantly, those entities enjoy different degrees of immunity. *Id*. at 164. According to the *Schwindel* Court:

> Obviously, the General Assembly knew the difference
> between a section and a subsection and intended the last
> sentence of KRS 65.2003 (section 18 of the Act) to
> pertain only to subsection (3), which pertains only to
> municipalities which, as noted *supra*, are not immune
> from vicarious liability for the tortious performance of
> ministerial duties by [their] employees.

*Schwindel*, 113 S.W.3d at 166.

In other words, the section upon which SouthPointe mistakenly relies as waiving Louisville Metro's immunity applies only to municipalities, not local governments and government entities. As previously mentioned, Louisville Metro

is a government entity, not a municipality, and has therefore not waived its immunity for damages suits.[8]

Finally, we address whether Division Thirteen erred in holding that SouthPointe impermissibly split its claims. After a review of the record and applicable case law, we agree with the circuit court's dismissal of SouthPointe's second claim, case No. 19-CI-006441. Regardless of SouthPointe's motivation for filing a second lawsuit against the individual defendants, SouthPointe may not split its causes of action stemming from the same nucleus of operative fact.

SouthPointe cites to *Coomer v. CSX Transp. Inc.*, 319 S.W.3d 366, 370 (Ky. 2010), for its contention that it may bring separate claims against the individual-capacity defendants. According to *Coomer*, for litigation to be barred by claim splitting, a form of claim preclusion, three elements must be present: (1) identity of the parties; (2) identity of the causes of action; and (3) final resolution on the merits. *Id*. at 371. However, SouthPointe fails to acknowledge the *Coomer* Court's explanation that claim preclusion and claim splitting, although "closely related," are actually separate rules. *Id*. According to our Supreme Court:

_____

[8] Similarly, Kentucky law affords planning commissions governmental immunity. *Cloyd*, 332 S.W.3d at 96. "'[G]overnmental immunity' is the public policy, derived from the traditional doctrine of sovereign immunity, that limits imposition of tort liability on a government agency." *Yanero*, 65 S.W.3d at 519 (quoting 57 AM. JUR. 2D, *Municipal, County, School and State Tort Liability*, § 10 (2001)). Accordingly, planning commissions "can be sued for damages for the tortious performance of a proprietary function but not a governmental function." *Schwindel*, 113 S.W.3d at 168.

The rule [against claim splitting], "found in Restatement (Second) of Judgments, §§ 24 and 26, is an equitable rule, limiting all causes of action arising out of a single 'transaction' to a single procedure." It rests upon the concept that "parties are required to bring forward their whole case" and may not try it piecemeal. Therefore, it "applies not only to the points upon which the court was required by the parties to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time."

"The key inquiry in deciding whether the lawsuits concern the same controversy is whether they both arise from the same transactional nucleus of facts."

*Id*. (citations omitted).[9]

---

[9] The *Coomer* Court recognized that claim splitting is subject to a number of exceptions, none of which has been argued by SouthPointe. The exceptions in full are:

(a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or

(b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action; or

(c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief; or

(d) The judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim; or

It is under this equitable rule that SouthPointe's claim before Division

Thirteen fails. SouthPointe has never disputed that its claim arose from the same

"transaction." *Id*. Accordingly, under Kentucky law, SouthPointe was required to

bring its claim against the various defendants in a single lawsuit rather than

piecemeal.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgments of both Division

Nine and Division Thirteen of the Jefferson Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Christopher W. Brooker
Louisville, Kentucky

BRIEF FOR APPELLEES:

John F. Carroll
Travis J. Fiechter
Louisville, Kentucky

---

(e) For reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course; or

(f) It is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as the apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty or the failure of the prior litigation to yield a coherent disposition of the controversy.

RESTATEMENT (SECOND) OF JUDGMENTS § 26 (1982). SouthPointe has not relied upon any of these exceptions, and so our analysis stops here.